**UNITED STATES of America**

v.

**Frank SHUFORD, Defendant.**

**Crim. No. 87–120.**

United States District Court,
W.D. Pennsylvania.

Dec. 31, 1987.

John J. Mead, Asst. U.S. Atty., for plaintiff.

David Rothey, Asst. Federal Public Defender, for defendant.

## OPINION

SIMMONS, District Judge.

Defendant, Frank Shuford has been charged with knowingly and unlawfully possessing a firearm not registered in the National Firearms Registration and Transfer Record, in violation of Title 26, U.S.C.A. Section 5861(d), and knowingly receiving and possessing a firearm transported in interstate commerce after having been convicted of a felony, in violation of Title 18 U.S.C.A., Section 922(g).

Defendant Shuford has moved, by his attorney, to suppress the evidence of his crime arguing that there was no reasonable suspicion for an investigation stop and no probable cause for arrest. For the reasons that follow, the motion to suppress will be denied.

A hearing was held before this Court on September 28, 1987, in which evidence was taken on the issue of suppression of a 16 gauge Savage Arms Shotgun, serial No. P562966, with a barrell length of 15–⅜" and an overall length of 22–¾ inches.

The Government contends the following: That on February 10, 1987, at approximately 7:12 o'clock, P.M., Sergeant Edward Sorace of the Pittsburgh Police Department was on duty in a police vehicle in the Manchester section of Pittsburgh (Suppression transcript (S.T.), 4, 17). At that time Sergeant Sorace received a radio communication that a black man was carrying a shotgun going door to door on Sheffield Street (S.T. 5). Sergeant Sorace immediately responded to the radio communication. As Sergeant Sorace was traveling down Sheffield Street, he stopped and backed into Fulton Street in order to turn his vehicle around. After backing into Fulton Street, Sergeant Sorace observed a man on the porch of 1112 Fulton Street (S.T. 7). The individual was standing on a stoop in front of the house with what appeared to be a shotgun or rifle in his hand pointed towards the front porch (S.T. 8). Sergeant Sorace exited his vehicle with his hand on his gun and a hand radio in his left hand. As Sergeant Sorace exited the car, the man with the shotgun turned around and leveled the shotgun at Sergeant Sorace (S.T. 8). Sergeant Sorace told the man to freeze and drop the gun. The man hesitated for a second and then lowered the gun to his right side (S.T. 9). Sergeant Sorace then walked up to the man (later identified as defendant Shuford), grabbed the gun from the defendant, turned defendant around, and patted him down (S.T. 9). The weapon (shotgun) seized is the subject of the current indictment of defendant Shuford as

well as the subject of the suppression motion.

Sergeant Sorace recognized at the time he approached the defendant that the weapon in defendants possession was an illegal firearm under Pennsylvania law, i.e., a sawed-off shotgun. He therefore arrested defendant for a violation of the Pennsylvania Uniform Firearms Act (S.T. 12).

Defendant's version of the events leading up to his arrest differ markedly from that of the government. Defendant Shuford claims that he had left a friends house and was waiting at a bus stop (S.T. 50). He testified that he was carrying a shopping bag filled with groceries and other items, including a half gallon of whiskey or vodka (S.T. 37, 53). As he was drinking from the bottle at the bus stop, a police paddy wagon occupied by a male and female police officer, approached. The female officer then exited the vehicle and informed the defendant that he was not allowed to drink in the street. Defendant claims that the female officer then asked him what was in the bag and proceeded, without permission, to rummage through the bag.

Defendant then alleges that when inside the bag, the female police officer found the 16 gauge sawed-off shotgun, which was broken down into barrel and butt sections, both sections being less than 18 inches long. Defendant argues that the officer could not have seen the gun before illegally searching through his bag as the bag was 18 inches high.

Both Sergeant Sorace and defendant Shuford testified before this Court, at the September 28, 1987, suppression hearing. Defendant's testimony was simply not credible or believable.

Defendant testified that he bought the shotgun on the same day he was arrested, February 10, 1987, (S.T. 35, 42). A receipt provided by the government following the suppression hearing shows the shotgun was purchased on January 12, 1987. (See Exhibit "A") In addition, defendant was unable to provide names and addresses of any of the people referred to in his version of the incident, (S.T. 45, 50–51).

Finally, the female officer, who defendant testified arrested him for drinking in public, Officer Vicki Powers, testified she arrived with another officer, Joseph Benz, following the arrest, (S.T. 13, 63–65). Officer Powers then testified that she and another officer, Officer Benz, assisted Sergeant Sorace, following the arrest, (S.T. 13, 33, 63–65, 70). Both Sergeant Sorace and Officer Powers contradicted defendant by testifying that the defendant did not have a brown bag with groceries or a bottle of liquor with him at the time of his arrest, (S.T. 13, 24, 65–66).

The Court having determined that defendant's version of the arrest lacks credibility, this Court must base its analysis upon the testimony of Officer Powers and Sergeant Sorace.

■ It is well established that a law enforcement official may make an investigatory stop short of arrest if based upon a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the case at hand, Sergeant Sorace had received information over his radio that a black man carrying a shotgun was going door-to-door on Sheffield Street. Sergeant Sorace immediately responded to the bulletin and saw defendant with his own eyes on a porch in the area of Sheffield Street with a weapon plainly in view in his hands. Thus, there is no question that Sergeant Sorace had the reasonable suspicion, (as defined by the United States Supreme Court), necessary for a *Terry* stop. Reasonable suspicion has been defined by the United States Supreme Court as "specific articulably facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 21, 88 S.Ct. at 1880. Sergeant Sorace made the stop following a radio call with information concerning a man fitting defendant's description going door-to-door carrying a gun. "An informant's tip can provide justification for a *Terry* stop even if the informant's reliability is unknown." *U.S. v. Porter*, 738 F.2d 622, 655 (4th Cir.1984), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323. In addition, even absent the radio information the site of a man in a highly populated residential neighborhood, with a dangerous

 

offensive weapon pointing toward a house, surely gives rise to "a reasonable suspicion that criminal activity is afoot", which creates a valid investigatory stop. *U.S. v. Rickus*, 737 F.2d 360, 365 (3rd Cir.1984).

■ Once Sergeant Sorace recognized the weapon as a sawed-off shotgun, illegal under Pennsylvania law, he had the requisite probable cause for arrest. Probable cause exists for a warrantless arrest when, at the time of the arrest, the facts and circumstances within the officers' knowledge are "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

For the reasons stated above, defendant's motion for suppression of evidence is denied.

An appropriate Order will be entered.